**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT ASHLAND**

**CIVIL ACTION NO. 24-97-DLB**

**MICHAEL PERRYMAN**                                                                  **PETITIONER**

**v.**                            **MEMORANDUM OPINION AND ORDER**

**WARDEN FCI ASHLAND**                                        **RESPONDENT**

\*\*\* \*\*\* \*\*\* \*\*\*

Federal inmate Michael Perryman has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241 challenging the imposition of disciplinary sanctions against him. (Doc. # 1). The Court must screen the petition pursuant to 28 U.S.C. § 2243. *Pillow v. Burton*, 852 F. App'x 986, 989 (6th Cir. 2021).

**I.**      **Factual and Procedural Background**

The Court first notes that it dismissed without prejudice an earlier petition by Perryman asserting the same claims he presses here because he did not clearly articulate the basis for the habeas relief he sought. *See Perryman v. Warden*, No. 0:24-CV-72-DLB (E.D. Ky. 2024) ("*Perryman I*") (Doc. # 6 therein). Perryman failed to follow the Court's directions when re-filing his claims, *see id*. at 1-2, but the Court will nonetheless address the substance of his claims in this new petition. Further, Perryman attached relevant documentary evidence to his earlier petition in *Perryman I*, *see* (Doc. # 1-1 therein), but he did not attach those documents to his new petition in this case. For ease of discussion, all references to those documents in this opinion will be to the attachments he filed in

1

*Perryman I* (*e.g.*, "The Incident Report was issued on January 2, 2024. *See* (Doc. # 1-1 at 13 therein).").

At 7:39 p.m. on December 20, 2023, prison officials collected a urine sample from Perryman. *See* (Doc. # 1-1 at 13 therein). The sample was assigned specimen number 6005945686, and was tested on-site at 8:00 p.m. by officer Brian Ross. *See id.* at 11. The sample tested positive for tetrahydrocannabinol (THC), the main psychoactive component of marijuana. *See* (Doc. # 1-1 at 11 therein).

Two days later, the sample was sent to Phamatech Laboratories, an outside firm, for confirmation of the results. Phamatech received the sample on December 27, and tests conducted on December 29, 2023, confirmed the presence of marijuana metabolite. *See* (Doc. # 1-1 at 12 therein). Phamatech issued a one-page report of the results, which misspelled Perryman's last name as "Derryman." *See id.* The error was plainly typographical: the report indicated that it was a test of the same specimen number taken by the same Brian Ross at the exact same time and date as Perryman's. *See id.* In sum, Phamatech's report clearly established that it was Perryman's urine sample that had tested positive for marijuana.

Phamatech sent its results to prison staff by e-mail. Officer Chad Gee opened that e-mail on the morning of January 2, 2024, and reviewed the results. *See* (Doc. # 1-1 at 13 therein). Gee obtained written confirmation from the prison's Medical Department that Perryman was not prescribed any medication that could have caused a false positive. *See* (Doc. # 1-1 at 20 therein). On January 2, 2024, Gee issued Incident Report #3874598 ("IR") charging Perryman with violating Prohibited Act Code 112 for Use of

Drugs. *See id*. at 13, 18-19. The IR was delivered to Perryman four hours after Gee received Phamatech's e-mail. *See id*. at 13.

On January 10, 2024, a Disciplinary Hearing Officer ("DHO") held a hearing on the charge. Perryman did not request staff representation or present any evidence. *See* (Doc. # 1-1 at 21-24 therein). At the hearing, Perryman denied the charge, stating only that "I have been trying to take medication from psychology." *See* (Doc. # 1-1 at 14 therein). The DHO found Perryman guilty of the offense. *See id*. at 15. In doing so, the DHO rejected Perryman's implication that other medications might have caused a false positive, noting the prison Medical Department expressly stated that they could not have done so. *See id*. at 15-16. The DHO also rejected any concerns regarding the chain of custody, noting that "you authorized the collection of your specimen for the purpose of a drug screen. You acknowledged that the specimen container was sealed with a tamper-proof seal in your presence; and the information provided on this form and on the label affixed to the specimen container is correct." *See* (Doc. # 1-1 at 16 therein). The DHO imposed various sanctions including the disallowance of good conduct time. The DHO Report was delivered to Perryman on January 24, 2024. *See id*. at 16-17.

Perryman promptly appealed his disciplinary conviction, arguing that the DHO's decision was not supported by "some evidence" because:

(1)  the January 2, 2024, IR was not issued within 24 hours in accordance with BOP Program Statement ("PS") 5270.09 because Phamatech sent its e-mail on December 29, 2023;

(2)  Phamatech failed to complete certain portions of the chain of custody form in accordance with PS 6060.08, rendering its results "inadmissible"; and

3

> (3)   Phamatech's report lists "Derryman," not "Perryman," as the specimen donor, rendering the report "inadmissible" regarding Perryman's commission of the disciplinary offense.

(Doc. # 1-1 at 9-10 therein).  The Mid-Atlantic Regional Office ("MARO") denied the appeal but indicated that the DHO Report would be amended to "clarify the inaccurate documentary evidence," "address the timing that the incident report was written," and "correct errors in section V."  *See* (Doc. # 1-1 at 7 therein).[1]  MARO failed to identify specifically the deficiencies it perceived, and they are not readily apparent in the DHO Report Perryman provided.  MARO also stated that the Medical Department had indicated that Perryman was not taking any medication that would have caused a false positive for "buprenorphine."  *See id*.  That was an obvious error by MARO: medical staff indicated that Perryman was not taking any medication that would have caused a false positive for *marijuana*, the only drug he was actually tested for and convicted of using.  *See* (Doc. # 1-1 at 20 therein).

Perryman appealed to the BOP's Central Office on essentially the same grounds he asserted before MARO.  *See* (Doc. # 1-1 at 4-5 therein).  The Central Office ignored MARO's evident error identifying the narcotic at issue, noting only that MARO had directed a rewrite of the DHO Report simply "to clarify a typographical [error] in the lab report," presumably referring to the misspelling of Perryman's last name.  The Central Office denied Perryman's appeal.  *See* (Doc. # 1-1 at 2-3 therein).

---

[1] The DHO issued an amended DHO Report on March 20, 2024.  *See* (Doc. # 1-1 at 5 therein).  Perryman has not filed a copy of this document.  However, his description of it indicates that the changes which were made to it involved correction of minor misspellings and are not material to the Court's disposition of his claims.

4

**II.      Discussion**

In his habeas corpus petition, Perryman asserts the same grounds for relief as those presented to MARO. Perryman's petition will be denied because the materials he filed in support of it establish that he was afforded adequate due process. When a prisoner believes that he was deprived of sentence credits for good conduct without due process of law, he may invoke this Court's habeas corpus jurisdiction under 28 U.S.C. § 2241. *Preiser v. Rodriguez*, 411 U.S. 475, 487-88 (1973). Before such credits are taken, due process requires that the inmate be given:

(1) written notice of the charges against her at least 24 hours before the administrative hearing on the charges;

(2) a hearing before an impartial decision-maker;

(3) assistance from a competent inmate or staff member, if the inmate requests one and she will likely be unable to present a defense because she is illiterate or the case is too complex for her to comprehend;

(4) the opportunity to call witnesses and present documentary evidence, if doing so would not jeopardize institutional safety or correctional goals; and

(5) a written statement by the hearing officer explaining the evidence relied upon and the basis for the decision.

*Wolff v. McDonnell*, 418 U.S. 539, 564-70 (1974). The Bureau of Prisons has included these and even broader protections by regulation. *See* 28 C.F.R. §§ 541.5 - 541.8; BOP Program Statement 5270.09 (Nov. 2020). However, an agency's failure to strictly comply with its own policies does not violate due process. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985); *United States v. Rutherford*, 555 F.3d 190, 192 (6th Cir. 2009) ("[T]he Constitution does not demand a bright-line rule whereby every breach of federal administrative policy also violates the Due Process Clause.").

Due process also requires the prison disciplinary board's decision to be supported by "some evidence" in the record. *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985). Because the quantum of evidence required to meet that standard is minimal, the reviewing court should not re-examine the entire record, independently assess the credibility of witnesses, or weigh the evidence. Instead, it need only confirm that "there is *any evidence* in the record that could support the conclusion reached by the disciplinary board." *Id*. at 454-55 (emphasis added); *Selby v. Caruso*, 734 F. 3d 554, 559 (6th Cir. 2013).

Perryman first complains that he did not receive a copy of the Incident Report within 24 hours after Phamatech sent its e-mail confirming the positive drug test. This claim does not provide a basis for habeas relief because due process requires only that an inmate receive notice of the charges 24 hours before the hearing. *Wolff*, 418 U.S. at 564. Perryman does not contest that he received notice of the charges well in advance of the DHO hearing.

Instead, Perryman relies on BOP rules which indicate that an Incident Report should generally be issued to the inmate within 24 hours after the incident involved. But the regulation in question does not assist him. Perryman invokes PS 5270.09, Ch. 2, p. 18, which states that the inmate "will ordinarily receive the incident report within 24 hours of staff becoming aware of your involvement in the incident." This portion of the PS is a direct quotation from 28 C.F.R. § 541.5(a). The key word here is "ordinarily." By its terms, the regulation contemplates that under certain circumstances notice may be delayed, and hence it does not create an inflexible rule demanding compliance within a strict timeframe. *Craig v. Kizziah*, No. 6: 19-CV-141-REW, 2019 WL 7285556, at *4 (E.D. Ky. Dec. 27,

6

2019) (citing *Mendoza v. Tamez*, 451 F. App'x 715, 717 (10th Cir. 2011)), *aff'd sub nom. Craig v. Matevousian*, No. 20-5155, 2020 WL 4516009 (6th Cir. July 17, 2020). Thus, neither the Constitution, the regulation, nor the applicable PS required that he receive a copy of the Incident Report within a particular timeframe.

Perryman's second and third claims argue that the DHO's decision was not supported by "some evidence" because Phamatech's lab report was not fully completed and contained a typographical error. As noted above, while Phamatech misspelled Perryman's last name, it referenced the correct specimen number, and specified the correct time, date, and collecting officer for the sample. Nothing in that trivial error undermines reliance upon Phamatech's inculpatory lab report.

Perryman also alleges that the accessioner (the lab technician performing the confirmatory tests), did not (1) identify the company that delivered the specimen; (2) state that the specimen container was intact; or (3) sign and date the report. *See* (Doc. # 1 at 6). Perryman does not support this allegation with evidence by attaching the pertinent document. Even assuming it to be true, he fails to establish viable grounds for habeas relief. The first and third omissions are housekeeping matters that have no obvious bearing upon the validity of Phamatech's drug test. The second omission might, but Perryman fails to support it. Regardless, and considering all three omissions, the *de minimis* "some evidence" standard was plainly satisfied. The Court's role is not to weigh the evidence, but only to determine if there is *any* evidence that would permit a rational factfinder to reach the same one arrived at prison officials. *Hill*, 472 U.S. at 454-55. The DHO could reasonably conclude that Phamatech's failure to complete every item in the report form did not undermine the validity of its test results. Indeed, the BOP obtained its

own positive drug test result at the prison itself, and the "some evidence" standard does not require it to obtain outside confirmation of that result to satisfy the applicable due process requirements. *Selby*, 734 F. 3d at 559.

For each of these reasons, the petition is wholly without merit, and the Court will deny relief.

Accordingly, it is **ORDERED** as follows:

1. Michael Perryman's petition (Doc # 1) is **DENIED**.

2. This matter is **STRICKEN** from the docket.

This 5th day of November, 2024.

Signed By:
*David L. Bunning*  DB
United States District Judge

G:\Judge-DLB\DATA\ORDERS\PSO Orders\Perryman 0-24-97 Memorandum.docx